UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD WILSON,<br><br>    Plaintiff,<br><br>v.<br><br>PRICE, et al.,<br><br>    Defendants. | No. 2:15-cv-0866-KJM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, Gerald Wilson, is a state prisoner proceeding pro se and in forma pauperis in an action brought under 42 U.S.C. § 1983. Plaintiff asserts a claim for deliberate indifference to medical needs. Generally, he alleges that a correctional officer forced him to sleep in an upper bunk despite the fact that he has serious back problems and a documented need for a lower bunk. He also alleges that he slipped off a ladder while climbing down from the upper bunk, further injuring his back.

Defendant De La Cruz, the above mentioned correctional officer, has moved for summary judgment. Generally, he argues that plaintiff failed to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA") because he neither timely submitted a second-level appeal nor appealed the cancellation of his untimely second-level appeal. As discussed below, the motion should be granted and the action dismissed without prejudice.

////

1

**I.      Background**

   **A.      Factual Background**

      **1.      <u>Allegations in Plaintiff's Complaint</u>**

   For context, the court takes the following allegations from plaintiff's complaint. ECF No. 1.

   Plaintiff was in CDCR custody at all times relevant to his complaint. *See id.* at 5–6. On September 26, 2014, he was incarcerated at Calipatria State Prison ("CAL"). He was transferred to a California State Prison, Sacramento, in connection with a civil trial in the United States District Court for the Eastern District of California. *Id.*; *see also* ECF No. 39 at 47. On the evening of September 30, 2014, while en route to CAL, he stopped at Deuel Vocational Institution ("DVI") for a layover. ECF No. 1 at 6.

   At DVI, plaintiff received a medical screening. *Id.* at 7. Plaintiff informed a nurse that he had a serious back injury and was wearing a back brace. *Id.* He also informed the nurse that he had a lower bunk chrono. *Id.*

   Thereafter, plaintiff was escorted to the unit were he was to be housed for the layover. *Id.* He told De La Cruz that he had a lower back injury and wore a back brace and could not be assigned to an upper bunk. *Id.* at 7–8. De La Cruz ordered plaintiff into a cell and told him to take the issue up with his cellmate. *Id.* at 8. The inmate refused because the inmate had a lower bunk chrono and a cane. *Id.* Thus, plaintiff slept in the upper bunk, which he accessed via a ladder. *Id.*

   The next morning, plaintiff fell off the ladder as he was climbing down it and landed on his back. *Id.* Subsequently, he "had to be taken to the central clinic on a gurney." *Id.*

      **2.      <u>Summary Judgment Record</u>**

   The following evidence is relevant to the instant motion for summary judgment. Unless otherwise noted, the facts set forth below are not reasonably in dispute. Plaintiff was an inmate at CAL when the subsequent events took place.

   Based on the foregoing allegations, plaintiff filed an inmate appeal against De La Cruz using CDCR Form 602. ECF No. 1-2 at 5; ECF No. 33-4 ¶ 10. The appeal is dated October 4,

2014. ECF No. 1-2 at 5. It was received and accepted for review on October 14, 2014 at DVI. *Id.*; ECF No. 33-4 ¶ 10. D. Fenton, a correctional sergeant at DVI, interviewed plaintiff about the appeal on November 1, 2014. ECF No. 1-2 at 5; ECF No. 33-4 at 14; ECF No. 39 at 49.

On November 20, 2014, the appeal was denied at the first level. ECF No. 1-2 at 5; ECF No. 33-4 ¶ 10; ECF No. 33-4 at 14. In the first-level response, Fenton wrote that, if plaintiff was dissatisfied with the decision, he could "appeal to the next level . . . by utilizing Section D of [his] Form 602." ECF No. 33-4 at 14. The appeals coordinator at DVI returned the appeal to plaintiff on or about November 26, 2014. ECF No. 1-2 at 5.

Plaintiff attempted to appeal to the second level. The appeal was received at DVI on January 5, 2015. ECF No. 1-2 at 5. The following day, it was screened out and returned to plaintiff for failing to properly complete it. ECF No. 33-4 ¶ 10; ECF No. 33-4 at 9; ECF No. 39 at 49. In the attached CDCR Form 695, the appeals coordinator stated that the appeal was incomplete. ECF No. 33-4 at 9 (citing Cal. Code Regs. tit. 15, § 3084.6(b)(13)). To rectify the problem, the appeals coordinator instructed plaintiff to "Complete Section D of [Form] 602 before 602-A." *Id.* Plaintiff admits having made this "human error." *See id.*; ECF No. 39 at 49.

The parties' stories begin to diverge at this point. Plaintiff makes several contentions regarding his efforts to resubmit a corrected appeal. First, he contends that, on or around January 22, 2015, he sent to the "mail room" at CAL an envelope that was addressed to the appeals coordinator at DVI and that contained the corrected appeal. ECF No. 39 at 32, 49–50. Further, he contends that the mail room returned the envelope to him, telling him that he needed to add $0.90 in postage "for the mail to [be able to] go out [of CAL]." *Id.* at 7, 50. Additionally, plaintiff contends that, on January 25, 2015, he submitted another such envelope with the required postage to the mail room. *Id.* at 8, 50. Moreover, he contends that it was received at DVI, but that the appeals coordinator returned it without processing it "for no reason." *Id.*

The stamp on the first envelope reads: "Refused by Addressee. Postage Due. Returned to Sender." ECF No. 33-4 at 25. Also, "90 ¢" is handwritten on the envelope. *Id.* Likewise, there is a similar stamp on the second envelope. *Id.* at 26. It is less legible than the stamp on the first envelope. Like the first stamp, it says "Returned to Sender." *Id.* at 26. However, in contrast to

3

the first stamp, it does not appear to say "Refused by Addressee." *Id.* Furthermore, while both envelopes appear to have one postage stamp affixed to them, they are different. *Id.* at 25–26. Additionally, no money amount is written on the second envelope. *Id.* at 26. In plaintiff's opinion, these differences show that the second envelope was sent to DVI and that it was sent back for no reason. ECF No. 39 at 8.

De La Cruz agrees that the CAL mail room received these envelopes. ECF No. 40 at 5. However, he asserts that the envelopes "each contain a post office stamp indicating [p]laintiff failed to attach sufficient postage, and a post office stamp to return the mail to the sender." *Id.* (citing ECF No. 33-4 at 25–26).

Eventually, plaintiff resubmitted his appeal to the second level. It was received at DVI on March 23, 2105. ECF No. 33-4 ¶ 10; ECF No. 1-2 at 7. The appeal was cancelled. ECF No. 33-4 ¶ 10; ECF No. 33-4 at 8. On March 24, 2015, in a CDCR Form 695 serving as the cancellation letter, the appeals coordinator stated that plaintiff did not return the screened-out appeal to DVI until March 23, 2015, which "exceeded the 30 day time limit to submit the appeal for further review." ECF No. 33-4 at 8 (citing Cal. Code Regs. tit. 15, § 3084.6(c)(4)); *see also* Cal. Code. Regs. tit 15, § 3084.8(b)(3) (inmate must appeal "unsatisfactory departmental response to an appeal filed" within "30 calendar days" of receiving it). Furthermore, the appeals coordinator stated that plaintiff could file "a separate appeal . . . [of] the cancellation decision." ECF No. 33-4 at 8 (citing Cal. Code Regs. tit. 15, § 3084.6(e)). Plaintiff admits that the appeals coordinator returned his resubmitted appeal to him on March 24, 2015. ECF No. 39 at 9.

V. Brunetti works at DVI as the appeals coordinator. ECF No. 33-4 ¶ 1. In this capacity, Brunetti is "responsible for screening, logging, and processing non-healthcare related appeals by inmates at DVI." *Id.* ¶ 2. Likewise, Brunetti "review[s] inmate appeals to ensure that they comply with regulations, coordinate the processing of appeals, and maintain records associated with appeals." *Id.* Additionally, Brunetti is "a custodian of records and can verify if an inmate at DVI has submitted a non-healthcare related appeal on a particular issue." *Id.* Moreover, Brunetti states that "DVI maintains a record of submitted inmate grievances" and describes the "electronic database used for tracking grievances," which "is called "Inmate/Parolee Appeals Tracking

System—. . . ('IATS')." *Id.* ¶ 8. Further, Brunetti states that he/she "conducted a search of appeals submitted by [plaintiff] between September 2014 and April 2015." *Id.* Brunetti adds that he/she attached as an exhibit to his/her declaration "a true and correct copy of the IATS printout showing [plaintiff's] appeals at DVI, which includes the above-mentioned time frame." *Id.* ¶ 9; *see also id.* at 6.

Based on his/her search, Brunetti states that plaintiff "never appealed the cancellation [of his appeal]." *Id.* ¶ 10; *see also id.* at 8–27. Plaintiff has not disputed this assertion. *See generally* ECF No. 39.

De La Cruz has also submitted the declaration of M. Voong, who is the "Chief of the Office of Appeals ('OOA')" for the CDCR. ECF No. 33-6 ¶ 1. Voong states that, "[a]s Chief of OOA, [he/she] is familiar with . . . OOA's record-keeping system," including IATS. *Id.* ¶ 3. Voong further states that he/she "conducted a search of the grievance system covering the [relevant time frame] [] [that] yielded no [third-level] appeals submitted by [plaintiff] . . . ." *Id.* ¶ 6. Plaintiff has not disputed this assertion. *See generally* ECF No. 39.

**B.     Procedural Background**

Plaintiff filed his complaint in April 2015. The court screened it and found that plaintiff stated a cognizable claim for deliberate indifference to medical needs against De La Cruz. ECF No. 11 at 2. The court dismissed all other defendants. *Id.* at 2–4.

On June 26, 2017, De La Cruz filed a motion for summary judgment. ECF No. 33. De La Cruz asserts that, after plaintiff's appeal was denied at the first level, he failed to follow instructions when submitting his second-level appeal. ECF No. 33-2 at 7. This failure, he continues, caused his appeal to be screened out on January 6, 2015. *Id.* However, he asserts that plaintiff failed to resubmit his appeal to the second level until March 23, 2015, well beyond the 30-day deadline for resubmission. *Id.* at 4, 7. Further, De La Cruz asserts that plaintiff failed to appeal the cancellation of his appeal for being untimely even though the appeals coordinator told him how to do so in the cancellation letter. *Id.* Thus, De La Cruz concludes that plaintiff failed to exhaustive administrative remedies. *Id.*

/////

| | |
|---|---|
| 1 | On September 18, 2017, plaintiff filed an opposition to the motion for summary judgment. |
| 2 | ECF No. 39. Plaintiff argues that De La Cruz and other CDCR officials "thwarted" his ability to |
| 3 | exhaust administrative remedies. *Id.* at 2. To support this assertion, he contends that, on January |
| 4 | 25, 2015, he mailed an envelope containing the corrected appeal to DVI. *Id.* at 7, 50. Further, he |
| 5 | contends that DVI returned it unopened "for no reason." *Id.* at 50. Additionally, as noted, he |
| 6 | argues that the differences between the first and second envelopes show that he mailed the second |
| 7 | envelope properly. *Id.* at 7–8; *supra* at 3–4. |
| 8 | Moreover, plaintiff observes that De La Cruz contends that DVI received the corrected |
| 9 | appeal on March 23, 2015. *Id.* at 9. He also observes that cancellation letter is dated March 24, |
| 10 | 2015. *Id.* Based on these two observations, he seems to argue that the appeals coordinator must |
| 11 | have received the appeal before March 23, 2015. *See id.* For, in his apparent assessment, it |
| 12 | would have been "impossible" for the appeals coordinator to return the appeal to him in one day |
| 13 | "by institutional [m]ail." *See id.* |
| 14 | Finally, plaintiff argues that certain statements of Brunetti, the current appeals coordinator |
| 15 | at DVI, are inadmissible because they are not based on personal knowledge. *Id.* at 6, 12. This is |
| 16 | because, plaintiff continues, Brunetti was not the appeals coordinator in January 2015 (i.e., when |
| 17 | plaintiff allegedly timely submitted his appeal to the second level). *Id.* at 6, 17. Therefore, |
| 18 | plaintiff concludes that Brunetti's statements that he failed to submit his second-level appeal until |
| 19 | March 23, 2015 are "based on information and belief" and, hence, insufficient to "raise a triable |
| 20 | issue of fact." *Id.* at 13. |
| 21 | In reply, De La Cruz argues that, "[i]f Plaintiff's appeal was returned to him in a manner |
| 22 | he thought was improper, he should have followed the directions on the cancellation letter and |
| 23 | appealed the cancellation[.]" ECF No. 40 at 5. Furthermore, as noted, he contends that the |
| 24 | envelopes "each contain a post office stamp indicating [p]laintiff failed to attach sufficient |
| 25 | postage, and a post office stamped instruction to return the mail to the sender." *Id.* (citing ECF |
| 26 | No. 33-4 at 25–26). |
| 27 | ///// |
| 28 | ///// |

## II. Standard of Review

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994). In essence, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995) (per curiam).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g.*, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which

demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 324 (citation omitted) ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in [Rule 56(a)], is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable to the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim, that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Devereaux*, 263 F.3d at 1076 (citations omitted). More

8

significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a reasonable jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 837 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

**III.    Analysis**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's . . . critical procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Thus, "to properly exhaust administrative remedies, prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ] rules that are defined. . . by the prison

9

grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Ngo*, 548 U.S. at 88); *see also Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (per curiam) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'" (quoting *Bock*, 549 U.S. at 218)).

In California, an inmate may appeal "any policy, decision, action, condition, or omission . . . having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Inmates must complete three levels to exhaust the appeal process: (1) formal written appeal on CDCR Form 602; (2) second-level appeal to the institution head or designee; and (3) third-level appeal to the Director of the CDCR. *Id.* § 3084.7. The third level constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. *Id.* § 3084.1(b); *see also Jackson v. Fong*, 870 F.3d 928, 932 (9th Cir. 2017) (citations omitted).

"[T]he PLRA contains [an] exception to mandatory exhaustion." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies[.]" *Id.* That is, "[a]n inmate. . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* Generally, a remedy is unavailable if it is "incapable of use" to obtain "some relief for the action complained of." *See id.* at 1859.

The Ross Court identified "three kinds of circumstances in which an administrative remedy . . . is not capable of use to obtain relief." *Id.* "First, . . . an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, a remedy is incapable of use when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The Ninth Circuit, likewise, has identified circumstances in which an inmate's "administrative remedies [are] effectively unavailable." *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010). One such circumstance occurs when "prison officials screen[] [the inmate's] grievance . . . for reasons inconsistent with or unsupported by applicable regulations." *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010). Another occurs when "prison officials' failure to

respond to a properly filed grievance makes remedies 'unavailable' and therefore excuses a failure to exhaust." *Id.* at 822 (9th Cir. 2010) (citation omitted).

Likewise, a remedy is unavailable when the inmate takes "reasonable and appropriate steps to exhaust his [] claim," but is "precluded from exhausting . . . by [a prison official's] mistake." *Nunez*, 591 F.3d at 1224. However, "[t]he obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005). Furthermore, unless "the prison's administrative grievance regime [is] so complex as to trip up most prisoners," *Sapp*, 623 F.3d at 827, remedies are available "where the prisoner himself made some error in following grievance procedure," *Turley v. Rednour*, 729 F.3d 645, 650 n.3 (7th Cir. 2013) (citations omitted). Likewise, "the unavailability of administrative remedies due to missed deadlines does not render such remedies 'exhausted' under the PLRA, nor does it excuse a failure to exhaust."[1] Additionally, "vague assertion[s]" that prison officials did not process an inmate's appeals, or "stopp[ed] them from being processed," are insufficient to create a genuine factual dispute regarding the availability *vel non* of a remedy.[2]

---

[1] *Manley v. Rowley*, 847 F.3d 705, 712 (9th Cir. 2017) (citing *Ngo*, 548 U.S. at 90–93); *accord Nunez*, 591 F.3d at 1229 ("[T]he exhaustion requirement is not satisfied when grievances are dismissed because prisoners missed deadlines or otherwise failed to comply with the grievance policy." (citing cases)); *Marella*, 568 F.3d at 1027 ("[Inmates are] required to 'complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.'" (quoting *Ngo*, 548 U.S. at 88)).

[2] *See Tubach v. Lahimore*, No. 1:10–cv–913 AWI SMS (PC), 2012 WL 4490792, at *3 (E.D. Cal. Sep. 28, 2012); *see also Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012) (per curiam) (conclusory assertions that prison officials did not process grievance "fail[] to create a genuine dispute as to [inmate's] exhaustion of this grievance" (citation omitted)); *Jeffries v. Fields*, No. CV 12–1351 R(JC), 2014 WL 994908, at *18 (C.D. Cal. Mar. 10, 2014) ("conclusory" assertion[s] that prison officials "obstructed the remedy process" and "tamper[ed]" with inmate's grievances are "are insufficient to demonstrate that any failure to exhaust was excused due to misconduct by prison officials that rendered further administrative remedies unavailable" (citations omitted)); *Meador v. Wedell*, 2:10-cv-00901-KJM-DAD, 2012 WL 360199, at *7 (E.D. Cal. Feb. 2, 2012) ("Plaintiff's mere conclusory allegation that his inmate appeals were improperly rejected and closed is insufficient" to show that prison officials "improperly screened-out" said appeals. (citing cases)), *report and recommendation adopted*, 2:10-cv-00901-KJM-DAD (E.D. Cal. Mar. 28, 2012); *Crayton v. Hedgpeth*, No. C 08–00621 WHA (PR), 2011 WL 1988450, at *7 (E.D. Cal. May 20, 2011) ("Plaintiff's allegations of lost, stolen, and destroyed grievances are too vague to effectively rebut defendants' claim that plaintiff

Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Bock*, 549 U.S. at 204; *see also id.* at 216. To satisfy its burden, the defendant must show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc). Once the defendant satisfies its burden, "the prisoner has the burden of production." *Id.* "That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). But "the ultimate burden of proof remains with the defendant." *Id.*

Here, based on the parties' evidence, a reasonable fact finder could only conclude that plaintiff failed to exhaust administrative remedies. Plaintiff's attempted second-level appeal was received on January 5, 2015. However, he failed to properly complete it, which he admits. Consequently, it was screened out and returned to him no later than January 22, 2015, along with an attached CDCR Form 695 explaining why it was screened out. ECF No. 39 at 30, 49. Plaintiff had thirty days from this date to resubmit a corrected second-level appeal. Cal. Code. Regs. tit 15, § 3084.8(b)(3). However, the evidence shows that his corrected second-level appeal was not received until March 23, 2015. Therefore, in accordance with the applicable regulations, it was cancelled as stated in the appeals coordinator's letter dated March 24, 2015. ECF No. 33-4 at 8 (citing Cal. Code Regs. tit. 15, § 3084.6(c)(4)).

Furthermore, even though plaintiff missed the deadline, the appeals coordinator informed him that, under the applicable regulations, he could appeal the cancellation. *Id.* (citing Cal. Code Regs. tit. 15, § 3084.6(e)). Yet Brunetti declares that plaintiff failed to appeal the cancellation,

---

has failed to exhaust his administrative remedies . . . ."); *Rodgers v. Reynaga*, No. CV 1–06–1083–JAT, 2009 WL 2985731, at *3 (E.D. Cal. Sep. 16, 2009) ("To grant Plaintiff an exception to PLRA's demand for exhaustion based solely on Plaintiff's self-serving testimony that his grievance was surreptitiously destroyed by prison officials would completely undermine the rule."); *Hendon v. Baroya*, No. 1:05-cv-00838-OWW-SMS PC, 2007 WL 3034263, at *3 (E.D. Cal. Oct. 16, 2007) ("The vague assertion that grievances were filed is insufficient to make the requisite showing that exhaustion either occurred or was excused due to some form [of] conduct on the part of prison officials which prevented plaintiff from properly utilizing the appeals process." (citations omitted)), *report and recommendation adopted*, 2008 WL 482868 (E.D. Cal. Feb. 20, 2008).

ECF No. 33-4 ¶ 10, and plaintiff has not disputed this factual assertion, *see generally* ECF No. 39. Thus, this fact is "undisputed for purposes of the [instant] motion [for summary judgment]." Fed. R. Civ. P. 56(e)(2); *see also Beard v. Banks*, 548 U.S. 521, 527 (2006) (plurality opinion) ("[B]y failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [said] statement." (citation omitted)). Likewise, Voong declares that plaintiff failed to file a third-level appeal, ECF No. 33-6 ¶ 6, and plaintiff has not disputed this factual assertion either, *see generally* ECF No. 39. Accordingly, the record demonstrates that De La Cruz has satisfied his burden of showing that "that there was an available administrative remedy and that [plaintiff] did not exhaust that available remedy." *Albino*, 747 F.3d at 1172.

Furthermore, plaintiff has not produced "evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). To bolster his position that he timely resubmitted a corrected appeal, he asserts that he sent an envelope containing said appeal to the mail room at CAL on January 22, 2015. However, plaintiff does not dispute that he failed to affix sufficient postage to it. *See* ECF No. 39 at 7–8, 50. Furthermore, while he contends that he submitted another such envelope with the required postage, his assertion that it was received at DVI and returned without processing for no reason is conclusory and unsupported. *Taylor*, 880 F.2d at 1045 ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data" (citation omitted)); *see also supra* at 11 n.2. There is simply no genuine dispute in that regard.

Plaintiff counters that certain differences between the first and second envelopes support a reasonable finding that DVI received and rejected the second envelope. But the few differences that plaintiff identifies are insignificant. He notes that, unlike the second envelope, the first envelope had "90 ¢" handwritten on it. But the bare fact that an initially returned envelope has "90 ¢" handwritten on it by an unidentified person does not support a reasonable inference that a subsequently returned envelope without such writing was rejected by prison officials for improper reasons. Plaintiff also notes that the stamps on each envelope are not identical. However, they

13

both have a similar shape and appear to have been created by a rubber stamp. *See* ECF No. 33-4 at 25–26. Furthermore, they both say "Returned to Sender." *Id.* The mere fact a subsequently, allegedly properly mailed envelope has a "Returned to Sender" stamp that is not identical to the stamp on an initially, admittedly improperly mailed envelope does not support a reasonable inference that that the subsequent envelope was rejected for reasons unrelated to mailing error. Additionally, plaintiff notes that the two envelopes had different postage stamps. But this observation, like the others, is immaterial. In short, it is speculative to infer from these minor differences alone that prison officials, be it through mistake or machination, thwarted plaintiff's ability to submit his second-level appeal. *See Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citation omitted) ("[M]ere . . . speculation [does] not create a factual dispute for purposes of summary judgment.").

Moreover, in the particular circumstances of this case, summary judgment would be proper even had prison officials obstructed plaintiff's attempt to submit the second-level appeal. It is undisputed that plaintiff resubmitted his appeal to the second level on March 23, 2015. It is also undisputed that plaintiff received the cancellation letter dated March 24, 2015. Therein, the appeals coordinator informed plaintiff that he could appeal the cancellation. But plaintiff failed to appeal the cancellation; he has not even argued, much less shown, that this remedy was unavailable. *See Brown*, 422 F.3d at 935 ("The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'").

Additionally, plaintiff argues that the appeals coordinator must have received the corrected appeal before March 23, 2015. To buttress this argument, he notes that the cancellation letter is dated March 24, 2015 and contends that it would have been "impossible" for the appeals coordinator to return it to him in the prison mail system in one day. ECF No. 39 at 9. However, the evidence shows that the appeals coordinator received the corrected appeal on March 23 and *dated* the cancellation letter March 24. There is no evidence that plaintiff actually *received* the cancellation letter on March 24. Furthermore, it is undisputed that the appeals coordinator received plaintiff's incomplete appeal on January 5, 2015 and that the corresponding cancellation letter is dated January 6, 2015. ECF No. 33-4 at 8; ECF No. 39 at 9. Thus, the evidence suggests

that the appeals coordinator prepared the letters explaining why these appeals were, respectively, screened-out and denied the day after receiving them. This, in turn, belies the notion that the appeals coordinator received the corrected appeal before March 23, 2015.

Lastly, plaintiff argues that Brunetti's declaration is inadmissible because it is not based on personal knowledge. To support this argument, plaintiff notes that Brunetti was not the appeals coordinator in January 2015 (i.e., when he allegedly timely submitted his appeal to the second level). ECF No. 39 at 6, 17. Therefore, plaintiff concludes that Brunetti has no way of knowing that he did not submit his corrected appeal in January 2015 as he contends, or that prison officials did not obstruct it. However, as set forth above, *see supra* at 4–5, Brunetti "is the Appeals Coordinator at [DVI], and as the custodian of records, can verify if an inmate . . . has submitted a . . . grievance . . . on a particular issue," *Anton v. Mendez*, No. 1:05 CV 00412 OWW YNP SMS (PC), 2009 WL 2705829, at *2 (E.D. Cal. Aug. 25, 2009), *report and recommendation adopted*, *Anton v. Takier*, No. 1:05 CV 00412 OWW YNP GSA (PC), 2009 WL 6622836 (E.D. Cal. Oct. 8, 2009). In short, the foundational statements in Brunetti's declaration, whose truth plaintiff does not challenge, are "sufficient to support a finding that [he/she] has personal knowledge" of whether plaintiff filed an appeal between January 5, 2014 (date incomplete appeal screened-out) and March 23, 2015 (date corrected appeal received). *See* Fed. R. Evid. 602. Hence, this argument fails.[3]

For the foregoing reasons, De La Cruz has carried his ultimate burden of showing that plaintiff failed to exhaust administrative remedies. *See Albino*, 747 F.3d at 1172. Accordingly, the action must be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." (citation omitted)), *overruled on other grounds by Albino*, 747 F.3d 1162.

---

[3] In any event, plaintiff does not dispute that he failed to appeal the March 24, 2015 cancellation of his corrected appeal even though the appeals coordinator told him how to do so in the cancellation letter. Therefore, even if Brunetti's statement that plaintiff did not timely submit a second-level appeal was inadmissible, a reasonable juror could still only conclude that he failed to exhaust this remedy. *See Brown*, 422 F.3d at 935.

15

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that De La Cruz's motion for summary judgment (ECF No. 33) be granted, and that the action be dismissed without prejudice for failure to exhaust administrative remedies under the PLRA.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: November 14, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE